UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN STANTON and ROBIN
STANTON,

    Plaintiffs,

                                      Honorable Linda V. Parker
v.                                     Civil Case No. 19-10133

LEONARD WOODSIDE,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

On January 14, 2019, Plaintiffs filed this lawsuit claiming that Defendant violated their civil rights under 42 USC § 1983. Specifically, Plaintiffs assert violations of their due process rights under the Fourteenth Amendment of the United States Constitution as a result of not being afforded the procedural protection of a name-clearing hearing when their positions ended with the Anchor Bay School District. The matter is presently before the Court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 5.) The motion has been fully briefed. (ECF Nos. 10, 13.) Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

I.   **Applicable Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack challenges the sufficiency of the pleading itself. In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

In contrast, a factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id.* When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove

[subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that Defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The

plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, a court may take judicial notice of "other court

proceedings" without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008)).

## II. Factual and Procedural Background

Plaintiffs John Stanton ("Mr. Stanton") and Robin Stanton ("Mrs. Stanton") (collectively "Plaintiffs" or "the Stantons") were employed at Anchor Bay School District as Principals of Anchor Bay High School and Anchor Bay Middle School, respectively. (Compl. ¶ 6, ECF No. 1 at Pg ID 2.) Defendant Leonard Woodside is the Superintendent for Anchor Bay School District. Plaintiffs employment was government by an employment agreement, which included the following grievance provision:

> Complaints by an Administrator or group of administrators relating to a violation, misinterpretation, or misapplication of a specific provision of this agreement or any policy, rule, regulation or practice shall be presented (in person or writing) to the Superintendent or his/her designee within ten (10) school days of such incident or occurrence. A conference with the Superintendent or designee will be scheduled to resolve the complaint within ten (10) days of its receipt. A written decision to the complaint shall be given to the administrator and the Association within ten (10) school days following the conference. If the Superintendent fails to provide a written decision within ten (10) such workdays, the Association may, at its discretion, move the grievance to the next level by following the procedures set forth below. If the administrator desires to pursue the complaint or the decision following the conference he/she may then appeal the matter through Association representation to the Executive Committee of the Board. The association leadership shall be provided the opportunity to

> present the complaint to a designated member (contact person) from the executive committee of the Board of Education for review and a hearing with the Executive Committee will be scheduled. …

(Def.'s Mot. Ex. F § 5.06, ECF No. 5-7 at Pg ID 117.)

Prior to the 2016-2017 school year, Plaintiffs were rated "highly effective" or "effective" during their annual performance reviews. (*Id.* ¶ 7, Pg ID 2.) During the 2016-2017 school year, Mr. Stanton received write-ups for actions he believed were innocuous and Mrs. Stanton was stripped of certain contractual duties, such as making staff assignments. (*Id.* ¶ 9, Pg ID 3.)

On or about May 26, 2017, Pat Mikolowski, a security guard at Anchor Bay High School, received a new job within the school district. (*Id.* ¶ 10, Pg ID 3.) As a parting gift, Mr. Stanton gave Ms. Mikolowski a wooden penis which Ms. Mikolowski previously had confiscated from a student and turned in to him. (*Id.* ¶ 12, Pg ID 3.)

On or about June 5, 2017, Sherry Kenward, Director of Student Services at Anchor Bay High School, learned about Mr. Stanton's gift to Ms. Mikolowski. Ms. Kenward informed Joe McDonald, the District's Director of Secondary Education. (*Id.* ¶ 13, Pg ID 3.) Ms. Kenward told Mr. McDonald that Ms. Mikolowski complained to her about the gift she received from Mr. Stanton. (*Id.*) Ms. Kenward further stated that Ms. Mikolowski reported that she and her husband were upset and embarrassed by the gift, and that Ms. Mikolowski cried all

weekend after receiving the gift. (*Id.*)  Ms. Kenward also told Mr. McDonald that Ms. Mikolowski said the reason she was leaving her current job was due to Mr. Stanton's treatment of her at Anchor Bay High School and from fear of retaliation from Mrs. Stanton, who she described as a "bitch."  (*Id.*)

Plaintiffs believe Ms. Kenward's statements were unsubstantiated allegations which resulted in a rating of "ineffective," the lowest rating given by Anchor Bay during the annual performance review. (*Id.* ¶ 14, Pg ID 4.)

During June 2017, Mr. Stanton was called into a meeting with Superintendent Woodside, Mr. McDonald, Assistant Superintendent Kyle Anderson, and Assistant Principal Vic Balaj.  (*Id.* ¶ 15, Pg ID 4.)  During this meeting, Mr. Stanton was told about Ms. Mikolowski's sexual harassment allegation against him and that his gift caused her to cry all weekend.  (*Id.* ¶ 16, Pg ID 4.)  Superintendent Woodside allegedly threatened Mr. Stanton by stating that if he did not tender his resignation within twenty-four (24) hours, Superintendent Woodside would file charges against him and performance evaluations reflecting Ms. Mikolowski's allegations would be made public.  (*Id.* ¶ 17, Pg ID 4.)  Within the following twenty-four (24) hours, Mr. Stanton resigned in exchange for reverting the performance evaluations to "effective."  (*Id.* ¶ 18, Pg ID 5.)

On or about July 11, 2017, Mr. Stanton received a call from Ms. Mikolowski, at which time Ms. Mikolowski stated that she never made a complaint

against him and had no issues with his gift. (*Id.* ¶ 19, Pg ID 5.) Ms. Mikolowski told Mr. Stanton that she and her husband had a good laugh about the gift and happily celebrated her birthday the weekend after she received it. (*Id.*) She further indicated that Ms. Kenward, upon somehow learning about the gift, called her into a meeting on May 30, 2017, where she directed Ms. Mikolowski to leave work and retrieve the gift from her house. (*Id.* ¶ 20, Pg ID 5.) Ms. Mikolowski did as Ms. Kenward directed. (*Id.*)

Upon bringing the gift to Ms. Kenward, Ms. Mikolowski "was sent to the office for another interrogation." (*Id.*) During the interrogation, Ms. Mikolowski, while crying, told Superintendent Woodside's wife that Mr. Stanton had done nothing wrong, she did not want to pursue charges of sexual harassment against him, and that she would not be a scapegoat for Anchor Bay officials to get rid of him. (*Id.*)

Mr. Stanton claims that despite learning of Ms. Mikolowski's intentions and knowing the falsity of Ms. Kenward's reports, Superintendent Woodside continued to investigate him. Mr. Stanton believes Superintendent Woodside continued his investigation to secure his resignation. (*Id.* ¶ 21, Pg ID 6.)

On or about August 2017, after resigning from Anchor Bay High School, Mr. Stanton secured a position with the Livonia School District as Principal of Churchill High School. (*Id.* ¶ 22, Pg ID 6.) Mr. Stanton believes that after

8

securing this position, Ms. Kenward or Superintendent Woodside called the Livonia School District and informed someone about the sexual harassment complaint against Mr. Stanton during his role as Principal of Anchor Bay High School. (*Id*. ¶ 23, Pg ID 6.) On or about August 7, 2017, that is three days after he began his new position, the Livonia School District required Mr. Stanton to tender his resignation based on the above described phone call. (*Id*. ¶ 24, Pg ID 6.) However, Mr. Stanton only formally resigned after he attempted suicide and was informed that his contract with the Livonia School District would be terminated. (*Id*. ¶ 25, Pg ID 7.)

Mr. Stanton believes that since his resignation from Anchor Bay School District, several district employees informed parents and others that he was investigated and fired for sexual harassment allegations. (*Id*. ¶ 26, Pg ID 7.) Mr. Stanton also believes that Superintendent Woodside directed Anchor Bay School District board members to tell anyone who inquired that Mr. Stanton left due to sexual harassment. (*Id*.) Mr. Stanton claims that the sexual harassment charge, which was made public by Superintendent Woodside and disseminated to the Livonia School District, stigmatized his reputation. (*Id*. ¶ 27, Pg ID 7.) He believes that prospective employers were also likely made aware of these stigmatizing allegations. (*Id*. ¶ 28, Pg ID 7.)

Mr. Stanton claims that the charge of sexual harassment is false. (*Id*. ¶ 29, Pg ID 8.) He further states that he was never afforded the procedural protection of a name-clearing hearing by Superintendent Woodside before publicly spreading false and damaging allegations against him. (*Id*. ¶ 30, Pg ID 8.)

Mrs. Stanton claims that her reputation also was stigmatized by false allegations. (*Id*. ¶ 32, Pg ID 8.) After Mr. Stanton's resignation, Mrs. Stanton was rated "minimally effective" on her 2016-2017 performance evaluation. (*Id*. ¶ 31, Pg ID 8.) The performance evaluation included comments regarding Mrs. Stanton's relationship with Ms. Kenward. (*Id*.) Plaintiffs allege that Ms. Kenward, in addition to fabricating allegations against Mr. Stanton, also informed the Anchor Bay School District Board that Ms. Mikolowski reported that Mrs. Stanton bullied her staff, retaliated against the staff, and was a "bitch." (*Id*.)

Mrs. Stanton alleges that these stigmatizing allegations against her were false and never verified. (*Id*.) She alleges that she was given a terrible review and was not able to discuss the matter with members of the school district. (*Id*.) She states that she was not afforded the procedural protection of a name-clearing hearing by Superintendent Woodside before having false and damaging allegations placed in her employee file. (*Id*. ¶ 35, Pg ID 9.) Mrs. Stanton claims that she was not able to return to work as the Principal of Anchor Bay Middle School due to the false allegations published against her and her husband. (*Id*. ¶ 36, Pg ID 9.)

In February 2018, Mr. and Mrs. Stanton filed a lawsuit against the Anchor Bay School District, Superintendent Woodside, and Ms. Kenward in state court (hereafter "state court lawsuit"). (*See* Def.'s Mot. Ex. A, ECF No. 5-2.) In the state court lawsuit, the Stantons asserted the following claims based on the conduct described above: defamation; intentional infliction of emotional distress; interference with advantageous contractual relations; breach of contract (against the school district, only); and, fraud (against the school district, only). (*Id.*)

The defendants in the state court lawsuit thereafter filed a motion for summary disposition, which the state court granted in part and denied in part on August 17, 2018. (Def.'s Mot. Exs. B & C, ECF Nos. 5-3, 5-4.) Specifically, the court dismissed all of the Stantons' claims against the school district and Superintendent Woodside, but allowed the lawsuit to proceed against Ms. Kenward. Ms. Kenward appealed the trial court's decision. The Stantons did not appeal the decision to dismiss their claims against the school district or Superintendent Woodside.

On January 14, 2019, Plaintiffs filed the current lawsuit against Superintendent Woodside.

### III. Superintendent Woodside's Arguments in Support of his Motion to Dismiss

In his motion, Superintendent Woodside makes five arguments for dismissal:

11

(I) Plaintiffs' lawsuit is barred by the doctrine of res judicata;

(II) Plaintiffs' claims are barred because they were not asserted in the state court in violation of Michigan Court Rule 2.203(A);

(III) Plaintiffs fail to state a cause of action because they resigned, did not request a hearing, and did not avail themselves of available procedural safeguards;

(IV) Superintendent Woodside is entitled to qualified immunity; and,

(V) Abstention is appropriate under *Younger v. Harris*, 401 U.S. 37 (1971).

(*See* Def.'s Mot., ECF No. 5.) The Court finds it necessary to address only Superintendent Woodside's first and third arguments, which are dispositive of the single claim the Stantons assert in this lawsuit.

## IV. Applicable Law & Analysis

### A. Res Judicata

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state court judgment that a court of the state in which the judgment was rendered would accord the judgment. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1983); *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). When deciding whether, and to what extent, to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state. *Migra*, 465 U.S. at 81; *Peterson*, 931 F.3d at 554 ("The preclusive effect of a state court judgment is determined by state law.").

In Michigan, res judicata applies where: (1) the prior action was decided on the merits; (2) both actions involved the same parties or their privies, and (3) the issues raised in the second case either were resolved in the first or, through the exercise of reasonable diligence, *could have been raised and resolved* in the first case. *Adair v. State of Michigan*, 680 N.W.2d 386, 396 (Mich. 2004). The Michigan courts employ "a 'broad view of res judicata[.]'" *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *In re MCI Telecomms. Complaint*, 596 N.W.2d 164, 183 (Mich. 1999)). The doctrine "'bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'" *Id*. (quoting *Adair*, 680 N.W.2d at 396). "Whether a factual grouping constitutes a transaction for purposes of res judicata is determined pragmatically by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit.'" *Id*. (quoting *Adair*, 680 N.W.2d at 398).

There is no dispute that the following res judicata requirements are satisfied here: (1) the present lawsuit involves the same parties as the state court lawsuit; (2) the same facts and evidence are essential to both actions such that they arise out of the same transactions; and, (3) the Stantons could have included their § 1983 procedural due process claim in their state court complaint. *See Arkansas Writers'*

13

*Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) ("federal and state courts have concurrent jurisdiction over actions brought under § 1983"). The parties disagree, however, on whether the state court lawsuit was decided on the merits since the trial court denied summary disposition to Ms. Keward and thus has not entered a final judgment in the state court lawsuit.[1] Plaintiffs argue, citing *Indiana Insurance Company v. Auto-Owners Insurance Company*, 680 N.W.2d 466 (2004), and *Goodrich v. Moore*, 155 N.W.2d 247 (Mich. Ct. App. 1967), that res judicata does not apply to orders granting temporary relief or interlocutory orders.

Both cases cited by Plaintiffs involved a trial court's *denial* of a motion for summary disposition. *Indiana Ins. Co.*, 680 N.W.2d at 471 n.8; *Goodrich*, 155 N.W.2d at 249. When a court denies summary judgment or disposition, further action by the court is required to determine the matter litigated. In comparison, when a court *grants* summary judgment or disposition, that is a "firm and stable" decision, and the "'last word' of the rendering court.'" *Kosiel v. Arrow Liquors Corp.*, 521 N.W.2d 531, 534 (Mich. 1994).

A decision granting summary disposition is granted preclusive effect. *See Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 537-38 (6th Cir. 2016)

---

[1] Ms. Keward's interlocutory appeal is pending before the Michigan Court of Appeals at this time. As indicated earlier, the Stantons did not appeal the state court's grant of summary disposition to the school district or Superintendent Woodside.

14

(concluding that the grant of summary disposition to one of two parties in a pending state court proceeding precluded the plaintiff's federal court action against that party); *Patel v. City of Ferndale*, No. 98-1087, 1999 WL 313843, at *2 (6th Cir. 1999) (concluding that the plaintiff's state court actions were decided on the merits when they were terminated pursuant to dispositive motions) (citing *Sherrell v. Bugaski*, 425 N.W.2d 707, 710 (Mich. Ct. App. 1988)); *see also Chakan v. City of Detroit*, 998 F. Supp. 779, 783 (E.D. Mich. 1998) (citing *Carter v. SEMTA*, 351 N.W.2d 920 (Mich. Ct. App. 1984)). Furthermore, under Michigan law, the pendency of an appeal does not remove a decision's preclusive impact. *See Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 536 (6th Cir. 2016) (citing *City of Troy Bldg. Inspector v. Hershberger*, 183 N.W.2d 430, 433 (Mich. Ct. App. 1970) ("The rule in Michigan is that a judgment pending on appeal is deemed res judicata.")).

For these reasons, the Court concludes that the Stantons' pending claim is barred under the res judicata doctrine.

**B.     Whether Plaintiffs State a Viable Procedural Due Process Claim**

The Due Process Clause of the Fourteenth Amendment prohibits the States from depriving individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Liberty interests protected by the Due Process Clause include injury to a person's "reputation, good name, honor, or integrity." *Ludwig*

*v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). To establish a violation of one's procedural due process rights, a plaintiff must show the deprivation of one of the above listed interests *without the afforded procedural protection*. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.), *cert. denied*, 537 U.S. 1019 (2002); *see also Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citation omitted) ("In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.").

Any deprivation of a person's interests in his or her reputation, good name, honor, or integrity "must be accompanied by notice and an opportunity to be heard to refute any charges against that person. *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). Such a hearing—referred to as a "name-clearing hearing"—is required if an employer creates a false and defamatory impression about a particular employee in connection with his or her termination. *Id.* (citing *Codd v. Velger*, 429 U.S. 624 (1976); *see also Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000). A name-clearing hearing gives an aggrieved employee or plaintiff the "opportunity to be heard to refute the charges disseminated against him." *Quinn*, 293 F.3d at 321.

However, in order to be deprived of a liberty interest without due process, an aggrieved employee *must request and be denied* a name-clearing hearing. *Id.* at 323. As the Sixth Circuit has explained:

> It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process of law. *Brown*, 214 F.3d at 723. Thus, the public employer deprives an employee of his liberty interest without due process, if upon request for a name-clearing hearing, the employee is denied. *Id.*

*Quinn*, 293 F.3d at 320 (additional citation omitted). As such, an individual must request a name-clearing hearing and be denied this procedural protection before it can be said that the individual suffered a deprivation of his or her liberty interest without due process of law. *Brown*, 214 F.3d at 723.

In *Brown*, because there was no evidence "to indicate that the plaintiffs ever renewed their request for a name-clearing hearing and were denied this hearing by the [defendant]," the Sixth Circuit held that there was no due process violation. *Id*. Likewise in *Quinn*, the court stated that a plaintiff "who fails to allege that he has requested a hearing and was denied the same has no cause of action, whether or not he had been informed of a right to a hearing before filing suit." 293 F.3d at 324.

In the instant case, the Stantons allege that they were public employees of Anchor Bay School District and suffered a deprivation of their liberty interests in that their reputations were stigmatized due to Superintendent Woodside's conduct. For purposes of evaluating the pending motion to dismiss, the Court will assume

17

that the Stantons have stated a claim for deprivation of their protected liberty interests in their good names and reputations. However, in their Complaint, the Stantons do not allege that they ever requested a name-clearing hearing. Nor do they assert that they did so in response to Superintendent Woodside's motion. This is fatal to their claim.

The Stantons nevertheless argue that they were not required to request a name-clearing hearing because they involuntarily resigned their positions. (*See* Pls.' Resp. Br. at 14, ECF No. 10 at Pg ID 175.) But the Stantons cite absolutely no authority to support this argument. (*Id*.) The Court found no authority to support it either.

The Stantons alternatively argue that Superintendent Woodside constructively prevented them from requesting a name-clearing hearing. In support of this argument, the Stantons contend that by the time they discovered that Ms. Mikolowski's complaint of sexual harassment had been fabricated, it was past the ten-day window available to exercise their right to a hearing under their employment contract. This argument does not explain *Mrs.* Stanton's failure to request a name-clearing hearing. In any event, the argument lacks merit for the reasons set forth below.

The grievance process afforded to administrators of Anchor Bay School District is distinct from a name-clearing hearing. In other words, the Fourteenth

18

Amendment's procedural due process clause provides a public employee with the right to a public hearing to clear his or her name, independent of any contractual right to be heard regarding a violation of one's employment agreement or a policy, rule, regulation, or practice. Plaintiffs cite no caselaw suggesting that any deadline for requesting a hearing under their employment contracts carried over to their due process rights. Moreover, Plaintiffs do not cite, and this Court did not find, a single decision where a court excused the plaintiff's failure to request a name-clearing for *any* reason. Finally, it seems to the Court that Plaintiffs still had to request, but be denied, a hearing—for example, because of the 10-day deadline—to now pursue their procedural due process claim.

In short, because the Stantons failed to request name-clearing hearings, they are precluded from asserting their Fourteenth Amendment procedural due process claim against Superintendent Woodside. This is the only claim asserted in the present lawsuit.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 5) is **GRANTED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: September 11, 2019